UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

QUDDOOS GILLIAM,

                              Plaintiff,

                                -v.-

SERGEANT BAEZ, FORMER
SUPERINTENDENT CATHERINE COOK,
CORRECTIONAL OFFICER S. FATUK,
CORRECTIONAL OFFICER JOHN DOE
#1, and CORRECTIONAL OFFICER JOHN
DOE #2,

                              Defendants.

15-CV-6631 (KMK)

OPINION & ORDER

Appearances:

Quddoos Gilliam
Otisville, NY
*Pro Se Plaintiff*

Eric T. Schneiderman, Esq.
Christina Okereke, Esq.
Office of the Attorney General of the State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Quddoos Gilliam ("Plaintiff"), currently incarcerated at Otisville Correctional Facility ("Otisville"), brings this Action under 42 U.S.C. § 1983 against Sergeant Baez ("Baez"), Former Superintendent Catherine Cook ("Cook"), Correctional Officer S. Fatuk ("Fatiuk"), Correctional Officer John Doe #1, and Correctional Officer John Doe #2 (collectively, "Defendants").[1] Plaintiff alleges that Defendants violated his rights under the First

---

[1] Defendants note that Fatiuk's name is spelled incorrectly as "Fatuk" in Plaintiff's Complaint. (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss the Compl. 1 n.1 (Dkt. No. 22).) The Court refers to Defendant Fatiuk by the correct spelling of his name, despite the fact

Amendment, Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000 et seq., the New York State Constitution and State Correctional Law § 610. (*See* Compl. (Dkt. No. 2).) Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). (*See* Mot. To Dismiss the Compl. (Dkt. No. 21).) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following allegations are taken from Plaintiff's Complaint and are treated as true for the purposes of resolving the instant Motion.

On June 27, 2013, Plaintiff—a "[p]racticing member[] of the [Nation of Islam ('NOI')] religion," (Compl. ¶ 7)—"'signed out' to attend NOI class at 6:15 PM on the Pass List inside his Housing Unit ('H.U.')," (*id*. ¶ 8). At the time, "Plaintiff was serving 30 days Loss of Recreation ('L.O.R.') as part of a disciplinary sanction impose[d] by the Otisville Correctional Facility Administration." (*Id.*) When Plaintiff arrived at the location of the NOI class, he was informed that he "[could not] attend NOI class" and instructed to return to his H.U. (*Id.* ¶ 10.) Upon returning to his H.U., Plaintiff was told by Defendant Fatiuk that Defendant Baez had ordered Plaintiff back to his H.U. because of Plaintiff's L.O.R. status. (*Id.* ¶ 12.) The next day, Plaintiff approached Defendant Baez in the messhall and Defendant Baez confirmed that he had ordered Plaintiff to return to his H.U. and that "the policy of [Otisville] [was] that if an inmate is on L.O.R. status[,] the inmate cannot attend [r]eligious [c]lasses." (*Id.* ¶ 15 (internal quotation

---

that the caption of this case reflects the misspelling. Additionally, the Court notes that in his letter to the Court filed June 3, 2016, Plaintiff requested to "remove officer S. Fatuk from [his] [Action], due to the fact that he was following orders under Sergeant Baez." (*See* Letter to Court (June 3, 2016) 1 (Dkt. No. 20).)

marks omitted).)  Plaintiff was told that he was "not attending NOI [c]lasses until [he] g[o]t off L.O.R."  (*Id.* ¶ 16 (internal quotation marks omitted).)

The following day, Plaintiff went to the Inmate Liaison Committee ("I.L.C.") and filed a report that inmates on L.O.R. status were being denied the opportunity to participate in religious classes and that Plaintiff would like the issue to be raised at the next I.L.C. agenda meeting.  (*Id.* ¶ 17.)  On June 30, 2013, Plaintiff "request[ed] to see Deacon Bormann[,] the facility coordinating chaplain."  (*Id.* ¶ 18.)  Plaintiff was told that "in order to speak with Deacon Bormann [Plaintiff] ha[d] to submit a formal request via 'interview slip'" or could approach Deacon Bormann when Plaintiff saw him on the facility compound.  (*Id.*)

On July 4, 2013, Plaintiff again attempted to attend NOI class, but was stopped by Defendant Fatiuk, (*id.* ¶ 19), and told that Plaintiff "[could not] leave [the] unit and attend religious class," (*id.* ¶ 20 (internal quotation marks omitted)).  Plaintiff then decided to file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  (*Id.* ¶ 21.)[2] Approximately three weeks after filing his grievance, Plaintiff received a decision that "[t]he issue ha[d] been resolved," that the facility had "outlined . . . what can be attended when an inmate is on [L.O.R.] status," and that Plaintiff's "[r]equest [wa]s outside the purview of the IGRC."  (*Id.* ¶ 22.)  Plaintiff was instructed that he could appeal the decision to the facility Superintendent, (*id.*), and promptly did so, (*id.* ¶ 23).  In response to Plaintiff's appeal, he received a letter from the Superintendent stating that despite the fact that "[t]here [was] no

---

[2] Despite the fact that Plaintiff alleges to have filed his grievance with the IGRC after the second denial to attend religious class on July 4, 2013, Plaintiff's grievance is dated July 2, 2013.  (*See* Compl. Ex. A at unnumbered 20–21.)  However, for the purposes of the instant Motion To Dismiss, the timing of Plaintiff's grievance to the IGRC is immaterial.

evidence to show malfeasance by staff," the facility had "clarified . . . what constitutes [L.O.R.]" and "[a] list ha[d] been distributed to all housing units."  (*Id.* Ex. B at unnumbered 23.)

Plaintiff appealed the grievance to the Central Office Review Committee ("CORC") "in order to r[a]ise awareness of the unlawful conduct by the staff at Otisville . . . because sometime[s] a lot of constitutional violation[s] . . . occur at [Department of Corrections and Community Supervision ('DOCCS')] facilities" and "the CORC [is] not aware of these violations."  (*Id.* ¶ 24.)

As a result of Defendants' alleged violations, Plaintiff seeks declaratory judgment, compensatory damages in the amount of $60,000, punitive damages "in an amount to be proved at tr[ia]l," and disbursement, costs, and interest.  (*Id.* at unnumbered 14 ¶¶ 1–5.)

B.  Procedural History

Plaintiff filed his Complaint on August 21, 2015.  (Dkt. No. 2.)  On December 1, 2015, Plaintiff's application to proceed in forma pauperis ("IFP") was granted by then-Chief Judge Loretta A. Preska of the Southern District of New York.  (Dkt. No. 4.)[3]  On December 15, 2015, the Court issued an Order of Service stating that "the Complaint [did] not provide sufficient information to permit the New York State Attorney General, which is the attorney for and agent of the New York State [DOCCS], to identify Correctional Officer John Doe #1 and Correctional Officer John Doe #2" and that "the Complaint lack[ed] any allegations addressing the conduct of any unnamed correctional officers."  (Order of Service 2 (Dkt. No. 6).)  Plaintiff was directed to "file an amended complaint within 45 days which [would] replace, not supplement, the original

---

[3] Plaintiff's case was initially assigned to Chief Judge Preska.  On December 9, 2015, Plaintiff's case was reassigned to this Court.  (*See* Dkt. (minute entry for Dec. 9, 2015).)

Complaint, in which Plaintiff [would] provide more detailed information regarding the John Doe Correctional Officers he wishe[d] to name as Defendants and their alleged involvement in the events giving rise to [Plaintiff's] [c]ase." (*Id.*) Plaintiff did not file an Amended Complaint within the time allotted.

On June 16, 2016, Defendants filed the instant Motion To Dismiss and accompanying memorandum of law. (Mem. of Law in Supp. of Defs.' Mot. To Dismiss the Compl. ("Defs.' Mem.") (Dkt. No. 22).) On September 13, 2016, Plaintiff filed a response to Defendants' Motion. (Resp. to Defs.' Movement [sic] Defense and Movement [sic] For Summ. J. ("Pl.'s Resp.") (Dkt. No. 26).)[4] On September 30, 2016, Defendants filed a reply. (*See* Reply Mem. of Law in Further Supp. of Defs.' Mot. To Dismiss the Compl. ("Defs.' Reply") (Dkt. No. 29).)

## II. Discussion

A. Standard of Review

1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the

---

[4] Plaintiff's response to Defendants' Motion To Dismiss is erroneously labelled as a response to a motion for summary judgment. (*See* Pl.'s Resp. 1). Nonetheless, the Court treats this filing as a response to the instant Motion To Dismiss.

complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### 2. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing

suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

   B. Analysis

      1. First Amendment

         a. Failure to State a Claim

Defendants seek to dismiss Plaintiff's Complaint on the basis that it fails to state a First Amendment claim. Defendants argue that "[P]laintiff fails to show any more than a de minimis burden, much less a substantial burden, on the free exercise of his religious beliefs." (Defs.' Mem. 8 (italics omitted).)

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), which includes the right to participate in religious services, *see*

8

*Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). A prisoner's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation marks omitted); *see also Weathers v. Rock*, No. 12-CV-1301, 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) (report and recommendation) (explaining that the right of inmates to freely exercise a chosen religion "is not limitless, and may be subject to restrictions relating to legitimate penological concerns"). Accordingly, a prisoner's free exercise claims are "judged under a reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights." *Ford*, 352 F.3d at 588 (internal quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–45 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that [the] plaintiff's claim is based upon a sincerely held religious belief." (alteration and internal quotation marks omitted)).[5] In determining whether a belief is "sincere"

---

[5] The Second Circuit has acknowledged that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014). The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question. *Id.* Accordingly, this Court "will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is

9

"an individual . . . need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (alteration and internal quotation marks omitted). Moreover, "[a] substantial burden on religious exercise exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (internal citations and quotation marks omitted). The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." *Ford*, 352 F.3d at 593–94. Once a plaintiff establishes this burden, "the defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin v. Goord*, 467 F.3d at 275 (alteration omitted). The burden then shifts to the inmate "to show that these articulated concerns were irrational." *Id.* (alteration and internal quotation marks omitted).

Defendants do not contest the sincerity of Plaintiff's religious beliefs. The Court, therefore, will assume for the purpose of resolving the instant Motion that Plaintiff's religious beliefs are sincerely held. Accordingly, the Court addresses whether Plaintiff has adequately alleged that his ability to exercise his religious beliefs was substantially burdened.

Plaintiff asserts that on two occasions, Defendants "den[ied] [him] the opportunity to participate in NOI class." (Compl. ¶ 25.) In the Second Circuit, courts have held that preclusion from attending two religious services is not, without more, a "substantial burden" on a plaintiff's

---

still valid." *Weathers*, 2014 WL 4810309, at *4; *see also Williams v. Fisher*, No. 11-CV-379, 2015 WL 1137644, at *16 (N.D.N.Y. Mar. 11, 2015) (same).

free exercise of religion. *See Jean-Laurent v. Los*, No. 12-CV-132, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015) (explaining that "[c]ourts within the Second Circuit have consistently held that missing two religious services does not pose a substantial burden on an inmate's religion" and collecting cases); *Blalock v. Jacobsen*, No. 13-CV-8332, 2014 WL 5324326, at *7 (S.D.N.Y. Oct. 20, 2014) (same); *Shapiro*, 2014 WL 1276479, at *11 ("[N]ot permitting a prisoner to attend two religious services 'is a de minimis, or insubstantial, burden on an inmate's ability to freely exercise his religion.'" (italics omitted) (quoting *Smith v. Graziano*, No. 08-CV-469, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010), *adopted by* 2010 WL 1332503 (N.D.N.Y. Apr. 6, 2010)).  Here, Plaintiff only claims that he was prohibited from attending two religious classes on June 27, 2013 and July 4, 2013. (*See* Compl. ¶¶ 8–10, 19–20.)  Indeed, Plaintiff admits that "[f]or at least seven years prior to the deprivations imposed by . . . Defendants, Plaintiff was permitted to participate in NOI class freely in other facilities whether on L.O.R. or not."  (*Id.* ¶ 52.)

Moreover, Plaintiff does not allege that the specific services were "'central or important' to his faith."  *Rossi*, 2015 WL 769551, at *8 (quoting *Ford*, 352 F.3d at 593).  Indeed, Plaintiff notes that "[t]he NOI [c]lass is the best opportunity for [him] to learn the basic doctrines of the NOI faith," (Compl. ¶ 26), but that "[t]here are several options for Plaintiff to learn about his religion," albeit "limited" options, (*id.* ¶ 30). *See Turner v. Safley*, 482 U.S. 78, 90 (1987) (noting a factor "relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates"); *Holland*, 758 F.3d at 222–23 (same); *Henry v. Schriro*, No. 10-CV-7573, 2011 WL 3370394, at *3 (S.D.N.Y. Aug. 2, 2011) (finding "the availability of alternative means of exercising the right to free exercise of religion" weighed in favor of granting the defendant's motion to dismiss);

11

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's First Amendment claims on the grounds that Plaintiff has failed to "make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington*, 2015 WL 1439348, at *9 (alteration and internal quotation marks omitted).

### b. Qualified Immunity

Defendants further contend that they are entitled to qualified immunity on Plaintiff's claims for monetary damages under the First Amendment. (*See* Defs.' Mem. 10–13.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Because qualified immunity is "an affirmative defense [that] . . . reflects an immunity from suit rather than a mere defense to liability[,] . . . it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss." *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) (italics and internal quotation marks omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014).

In determining whether a right is clearly established, "th[e] inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (internal quotation marks omitted). "In the

Second Circuit, 'a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 702 (S.D.N.Y. 2011) (quoting *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004)).

Here, as noted above, at the time Plaintiff was denied the ability to attend two NOI classes, it was far from clearly established that precluding an inmate from attending two religious classes violated the First Amendment. Indeed, courts in the Second Circuit have explicitly held otherwise. *See Jean-Laurent*, 2015 WL 1015383, at *6 ("Courts within the Second Circuit have consistently held that missing two religious services does not pose a substantial burden on an inmate's religion."); *Blalock*, 2014 WL 5324326, at *7 (same); *Shapiro*, 2014 WL 1276479, at *11 (same); *see also Smith*, 2010 WL 1330019, at *9 ("[T]he cancellation of two services did not violate [the] [p]laintiff's free exercise rights and such First Amendment claim should be dismissed."); *Williams v. Weaver*, No. 03-CV-912, 2006 WL 2794417, at *5 (N.D.N.Y. Sept. 26, 2006) (noting that inability to attend two religious services was not a substantial burden on the plaintiff's right to practice his religion). This is enough to safely conclude, at the absolute minimum, "a reasonable [prison official] would not have understood from the existing law that his conduct was unlawful." *Schubert*, 775 F. Supp. 2d at 702 (internal quotation marks omitted). Thus, Plaintiff's claims for monetary damages pursuant to violations of the First Amendment are dismissed.

### c.  Immunity Under the Eleventh Amendment

As to the declaratory relief Plaintiff seeks, (*see* Compl. at unnumbered 14, ¶ 1), Defendants assert that such relief is barred by the Eleventh Amendment, as Plaintiff's "alleged

constitutional violation is not ongoing," (*see* Defs.' Mem. 14). The Supreme Court has held that declaratory judgment is an inappropriate remedy to a past violation of federal law. *Green v. Mansour*, 474 U.S. 64, 73 (1985) (finding there was no "claimed continuing violation of federal law" or "threat of state officials violating the repealed law in the future" and that the Eleventh Amendment precludes declaratory relief).

As both Plaintiff and Defendants note, following the submission of Plaintiff's grievance, Otisville "clarified . . . what constitutes [L.O.R.]" and distributed a new list and revised Facility Operations Manual ("FOM") No. 223 to all housing units. (*See* Compl. Ex. B at unnumbered 23.) On the revised FOM No. 223, "Chaplain and Religious Services/Classes" is listed as an activity inmates *can* attend while on L.O.R. (*See* Decl. of Christina Okereke ("Okereke Decl.") Ex. A at 2 (Dkt. No. 23).) Therefore, without potential for future violations, the Eleventh Amendment prohibits declaratory relief and Plaintiff's claim for such relief is dismissed.

### 2. RLUIPA

As with Plaintiff's free exercise claim under the First Amendment, Defendants seek dismissal of Plaintiff's allegations pursuant to RLUIPA for failure to state a claim. (*See* Defs.' Mem. 15.) RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA "provides a more stringent standard than does the First Amendment, barring the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest." *Holland*, 758 F.3d at 224 (alterations and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d at 273 ("RLUIPA protects inmates by

providing that a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means." (quoting 42 U.S.C. § 2000cc-1(a)) (footnote omitted)). While "RLUIPA does not define 'substantial burden,' . . . the Second Circuit has assumed that '[s]ince substantial burden is a term of art in the Supreme Court's free exercise jurisprudence[,] . . . Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it.'" *Panayoty v. Annucci*, 898 F. Supp. 2d 469, 481–82 (N.D.N.Y. 2012) (second alteration in original) (quoting *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007)), *adopted sub nom. Bonilla v. Annucci*, 2012 WL 4378127 (N.D.N.Y. Sept. 25, 2012). "The Supreme Court has held that a substantial burden is one that 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 482 (alteration in original) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). Whether a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment. *See Valdez v. City of New York*, No. 11-CV-5194, 2013 WL 8642169, at *12 (S.D.N.Y. Sept. 3, 2013) ("To state a claim under both the Free Exercise Clause of the First Amendment and RLUIPA, an inmate must first allege that the government imposed a 'substantial burden' on his religious exercise." (citing *Salahuddin v. Goord*, 467 F.3d at 274–75)), *adopted by* 2014 WL 2767201 (S.D.N.Y. June 17, 2014); *Ramsey v. Goord*, 661 F. Supp. 2d 370, 395 n.12 (W.D.N.Y. 2009) (explaining that "the threshold inquiry of a religious freedom claim under both the First Amendment and the RLUIPA is the same"); *Pugh v. Goord*, 571 F. Supp. 2d 477, 504 (S.D.N.Y. 2008) (engaging in the same analysis for determining a plaintiff's sincerely held beliefs under both the RLUIPA and the Free Exercise Clause). "Where a plaintiff

15

adduces evidence sufficient to show that the government practice substantially burdens [his or] her religious exercise, the onus shifts to the government to demonstrate that the practice furthers a compelling governmental interest, and that the burden imposed on religion is the least restrictive means of achieving that interest." *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) (per curiam)(citing 42 U.S.C. § 2000cc-2(b)).

"RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland*, 758 F.3d at 224 (citing *Washington v. Gonyea*, 731 F.3d 143, 145–46 (2d Cir. 2013) (per curiam)); *see also Keitt v. Hawk*, No. 13-CV-850, 2015 WL 1246058, at *11 (N.D.N.Y. Jan. 8, 2015) (same). Instead, a plaintiff may only seek injunctive relief. *See Holland*, 758 F.3d at 224; *see also Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 520 (S.D.N.Y. 2010) ("It is readily apparent that injunctive relief constitutes appropriate relief under RLUIPA." (internal citations and quotation marks omitted)). However, here Plaintiff's does not seek injunctive relief. (*See* Compl. 14 ¶¶ 1–5.)[6] Accordingly, Plaintiff's claims under RLUIPA are dismissed.

### 3.  Equal Protection Under the Fourteenth Amendment

Defendants further contend that Plaintiff has failed to state a claim under the Equal Protection Clause to the Fourteenth Amendment. (Defs.' Mem. 16–17.) "The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (internal quotation marks

---

[6] Even were Plaintiff to seek injunctive relief, "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Here, because Otisville's policy now permits inmates on L.O.R. status to attend religious classes, (*see* Okereke Decl. Ex. A at 2), there is no future threat of injury to Plaintiff.

omitted). In other words, "the Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks omitted); *see also Bailey v. Town of Evans*, 443 F. Supp. 2d 427, 430 (W.D.N.Y. 2006) (same). To state a violation of the Equal Protection Clause, a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *see also Barrow v. Van Buren*, No. 12-CV-1268, 2015 WL 417084, at *22 (N.D.N.Y. Jan. 30, 2015) (same); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008) ("In order to plead a facially valid equal protection claim . . . [a] plaintiff must allege: (1) that he has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right.").

Plaintiff claims that by prohibiting Plaintiff from "attend[ing] NOI class," Defendants affected "the manner in which and how Plaintiff can practice his religion" and that Defendants had "discriminatory intent" in doing so. (Compl. ¶ 47.) Plaintiff asserts—and Defendants do not dispute—that at the time of the alleged incident, inmates were still "mandated" to attend "academic school, v[o]cational, R-SAT (substance abuse), ART (Aggression Recessive Training), OHM (Mental Health) [p]rograms" while on L.O.R. status, (*id.* ¶ 45), but were prohibited from attending religious classes, (*id.*).

Here, the deficiency in Plaintiff's equal protection claim is that it "does not allege that [Plaintiff] was treated differently from *any* identified individuals, let alone individuals who he

17

claims were similarly situated to him in any respect" and "is completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434–35 (S.D.N.Y. 2013) (dismissing the plaintiff's equal protection claim under theories of selective enforcement and class of one where the plaintiff "simply" alleged that the defendants "singled out [the] plaintiff, in part, because of his exercise of constitutional rights" (internal quotation marks omitted)); *see also Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *4–5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective enforcement and class of one theories because the complaint "only discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff, but there [was] no discussion whatsoever of any similarities between [the] [p]laintiff and others"). Indeed, Plaintiff specifically states that Defendants "don't allow[] Plaintiff *and other inmates who are on L.O.R. status* to attend religious class." (Compl. ¶ 45 (emphasis added).) Also, Plaintiff does not allege, for example, that Catholic inmates who were on L.O.R. status were allowed to attend religious services, while NOI observers were not. The absence of comparators is fatal to this claim and, therefore, Plaintiff's equal protection claim is dismissed.

### 4. State Law Claims

In addition to Plaintiff's federal claims, Plaintiff also asserts violations of the New York State Constitution and State Correctional Law § 610. (Compl. ¶¶ 55–64.) Where a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims. *See* 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and

internal quotation marks omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims." (internal quotation marks omitted)); *see also Erie Grp. LLC v. Guayaba Capital, LLC*, 110 F. Supp. 3d 501, 511 n.68 (S.D.N.Y. 2015) (same).

The Court finds that nothing distinguishes this Action from "the usual case." Plaintiff's federal claims are all dismissed prior to trial, *see Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—militate against such dismissal, 484 U.S. at 350 n.7. Thus, Plaintiff's state claims are dismissed without prejudice.

### III. Conclusion

For the above reasons, the Court grants Defendants' Motion To Dismiss. However, in light of Plaintiff's pro se status, and because this is the first adjudication of his claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above,

Plaintiff must do so within 30 days of the date of this Order. The failure to do so may result in the dismissal of this Action with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 21.)

SO ORDERED.

Dated:     February 2, 2017
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

20